IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **INGERSOLL CUTTING TOOL CO.,**<br>    **Plaintiff,**<br><br>vs.<br><br>**IOWA MIDLAND SUPPLY INC.,**<br>    **Defendant.** | **Case No. 06 C 00845**<br><br>**Magistrate Judge**<br>**P. Michael Mahoney** |

## MEMORANDUM OPINION AND ORDER

### I. Introduction

Before the court are the following five motions: Iowa Cutting Tool Company's ("ICTC") renewed motion for judgment as a matter of law under Rule 50(b) or, in the alternative, for a new trial under Rule 59(a); Iowa Midland Supply's ("IMS") motion for a new trial under Rule 59(a); IMS's motion to alter and amend Judge Kapala's order of April 2, 2008; ICTC's motion for leave to file a memorandum in excess of 15 pages; and ICTC's motion for a stay on enforcing judgment while the renewed motion for judgment as a matter of law is pending.

### II. Background

On February 15, 2006, ICTC filed a complaint against IMS alleging breach of contract for unpaid invoices. IMS filed a counterclaim alleging that ICTC breached a contract, intentionally defamed IMS, and intentionally interfered with IMS's business relations.

On December 13, 2007, Judge Kapala granted in part ICTC's motion for summary judgment on ICTC's breach of contract claim. At that time, Judge Kapala ordered the parties to submit supplemental briefs regarding damages and to address whether final judgment should be

1

entered pursuant to Federal Rule of Civil Procedure 54(b). On February 20, 2008, after considering the parties' supplemental briefs, Judge Kapala granted ICTC's motion for summary judgment regarding interest in the amount of $28,535.88, and costs and fees in the amount of $3948. He noted that IMS had not objected to ICTC's calculation of interest. Judge Kapala found that issues of fact existed regarding the remaining damages. He gave the parties 30 days to either come to an agreement regarding those damages or to schedule a hearing with the court.

On April 2, 2008, Judge Kapala entered the following minute order:

> Pursuant to agreement of parties, enter order respecting assessment of costs on summary judgment proceedings. Summary judgment is granted for plaintiff Ingersoll Cutting Tool Company and against defendant Iowa Midland Supply, Inc. in the amount of $128,094.74, including $95,161.22 in unpaid invoices, $28,535.88 in interest, and $4,397.64 in costs and fees. Plaintiff's motion for summary judgment is denied as to the remaining amount of costs and fees.

(Crt. Doc. 68.) On April 4, 2008, he entered on a separate paper the following order regarding the assessment of costs on the summary judgment proceedings:

### STATEMENT

> [ICTC] and [IMS], acting through their respective attorneys as evidenced by their signatures at the places designated below, agree that the damages remaining following the Court's Decision and Order dated February 20, 2008, in the above styled cause by the Honorable Frederick J. Kapala, are set forth below.
> The parties further agree that no findings under Federal Rule of Civil Procedure 54(b) shall be made as a result of the agreements reflected in the agreed amendment.

### CONCLUSION

> For the foregoing reasons, summary judgment is granted for Plaintiff in the amount of $128,094.74, including $95,161.22 in unpaid invoices, $28,535.88 in interest, and $4,397.64 in costs and fees. Plaintiff's motion for summary judgment is denied as to the remaining amount of costs and fees.

(Crt. Doc. 70.) The text of the order is followed by the signatures of Judge Kapala and the attorneys for both ICTC and IMS, and is dated April 2, 2008.

On May 5, 2009, Judge Kapala granted ICTC's motion for summary judgment regarding IMS's counterclaims of defamation and interference of business relations. He found that genuine issues of fact remained regarding IMS's breach of contract claim.

In the final pretrial order, signed by Magistrate Judge Mahoney on September 16, 2009, the parties consented to the jurisdiction of the magistrate judge. Judge Kapala transferred the case to Magistrate Judge Mahoney on September 17, 2009. A four day jury trial began on January 26, 2010. At the close of IMS's case, ICTC moved for judgment as a matter of law under Rule 50(a). The court granted that motion in part. The court ruled that IMS could not recover damages based on its theory that ICTC did not accept unused inventory. (Trial Tr. 326:11–14, Jan. 25, 2010 to Jan. 29, 2010.) The court found that the inventory at issue had been lost in the flood and was unsalable. (*Id.*) The court also ruled that IMS could not get "special damages." (*Id.* 328:4–13.) The court found that IMS had not presented sufficient evidence to sustain an award of special damages. (*Id.*) The court also found that ICTC properly terminated its relationship with IMS in 2005 regardless of which contract was in place at that time, and that damages related to a period of time after 2005 were unrecoverable. (*Id.*) The court denied the remainder of the motion.

On January 29, 2010, the jury came back with a verdict in favor of IMS in the amount of $347,868.74. Following the jury verdict, this court allowed the parties two weeks to brief the issues of whether Judge Kapala's April 2 order was a "judgment," and whether the court should setoff IMS's judgment with ICTC's award in Judge Kapala's order. The court asked the parties to calculate the amounts that would be owed, including interest, if the court setoff the judgments. The court withheld entering judgment on the jury verdict during the pendency of the briefing.

On February 9, 2010, ICTC filed a document titled, "Ingersoll Cutting Tool's Damages

3

Supplement," which calculated the amount owed to ICTC pursuant to Judge Kapala's April 2 order, including interest accrued up to February 11, 2010. ICTC also filed a renewed motion for judgment as a matter of law, and a motion to stay enforcement of the judgments pending the court's decision on the renewed motion for judgment as a matter of law.

On February 10, 2010, IMS filed a memorandum arguing that the judgments should be setoff, that Judge Kapala erred in awarding prejudgment interest of 15% to ICTC, and that Judge Kapala erred in awarding certain costs to ICTC. A hearing was held on February 11, 2010. The court determined that Judge Kapala's April 2 order stood alone as a judgment on ICTC's breach of contract claim, and directed the clerk's office to enter judgment on the jury verdict. The court then set a briefing schedule for all post-judgment motions.

### III. ICTC's renewed motion for judgment as a matter of law under Rule 50(b) or, in the alternative, for a new trial under Rule 59(a), and IMS's motion for a new trial under Rule 59(a)

ICTC filed a motion for judgment as a matter of law under Rule 50(b) or, in the alternative, for a new trial under Rule 59(a). ICTC's motion argues that the jury verdict was not supported by the evidence, and that IMS's counsel committed misconduct at trial. IMS also filed a motion for a new trial under Rule 59(a). IMS argues that the court erred in granting ICTC's Rule 50(a) motion for judgment as a matter of law.

If a party filed a motion for judgment as a matter of law under Rule 50(a), Rule 50(b) authorizes the party to renew that motion after the jury returns a verdict. *Fed. R. Civ. P.* 50(b). If a party files a Rule 50(b) motion, the court may allow the judgment on the verdict, order a new trial, or direct the entry of judgment as a matter of law after the jury returns a verdict. *Id*.

In deciding a Rule 50(b) motion, "the question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from

4

which it could reasonably derive its verdict." *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 924 (7th Cir. 2000). "But, there must have been more than a 'mere scintilla' of evidence to support the verdict." *Id*. Evidence and inferences drawn therefrom are taken in the light most favorable to the party against whom the motion is directed. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 515 (7th Cir. 1993). The court employs fundamentally the same standard as that used in deciding a motion for summary judgment. *Massey*, 226 F.3d at 924.

The Seventh Amendment to the Constitution captures a key principle on which our civil justice system is built: "the jury is the body best equipped to judge the facts, weigh the evidence, determine credibility, and use its common sense to arrive at a reasoned decision." *Id*. at 925. "Overturning a jury verdict is not something that [the court] do[es] lightly." *Id*.

Rule 59(a) authorizes the court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" *Fed. R. Civ. P.* 59(a)(1)(A). The district court has broad discretion in determining whether to grant a new trial. *McNabola*, 10 F.3d at 516. "In cases involving simple issues but highly disputed facts . . . , greater deference should be afforded the jury's verdict than in cases involving complex issues with facts not highly disputed." *Latino et al. v. Kaizer et al.*, 58 F.3d 310, 314 (7th Cir. 1995). The court must consider "if the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *McNabola*, 10 F.3d at 516 (*quoting Tapia v. City of Greenwood*, 965 F.2d 336, 338 (7th Cir. 1992)). "[N]ew trials granted [under Rule 59] because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Latino*, 58 F.3d at 315. "When the motion is based primarily on the excessive nature of the damages, the jury's

award may be vacated and a new trial granted only if the verdict is monstrously excessive or if there is no rational connection between the evidence of damages and the verdict." *McNabola*, 10 F.3d at 516 (internal quotes omitted).

The following evidence is a non-exclusive recount of evidence that supported the jury verdict. First, Robert Schobert, who worked as a factory representative for ICTC from 1994 until 2003, testified that Brian and Craig Stephen would not sign the 2001 Agreement. (Trial Tr. 53:7, 54:1.) Schobert stated that he always thought that IMS still had "exclusive territory" as it was set up in the "first contract," even after the 2001 Agreement had been sent to IMS for review. (*Id*. 57:16–21.) Schobert also discussed an email sent to him from his supervisor on February 19, 2002 indicating that IMS's exclusive territory would remain unchanged because IMS was the top distributor, and that neighboring distributors were not to sell in IMS's core territory. (*Id*. 58:17–19, 59:14–17, 20.) Schobert testified that both Brian and Craig Stephen complained to him about ICTC taking customers away from them. (*Id*. 56:6–7, 14–15, 63:18–64:4.)

Craig Stephen, president of IMS, also testified. Craig testified that IMS had a contract with ICTC awarding it exclusive territories. (*Id*. 93:25–94:1.) Craig testified that, pursuant to the 1994 and 1998 Agreements, ICTC controlled the products that it manufactured, and the prices and discounts associated with those products. (*Id*. 95:15, 96:1.) Craig discussed how ICTC assigned accounts to IMS, and that IMS then developed customer relationships with those account holders. (*Id*. 102:21, 103:16.) Craig testified that after he signed the 1998 Agreement, he continued to try to build Ingersoll business. (*Id*. 103:19.)

Craig further testified that the 1998 Agreement could only be terminated upon written, 30-day notice. (*Id*. 105:17–18.) Craig stated that he attempted to discuss the 2001 Agreement

with Elder after he received it, but that Elder changed the subject. (*Id*. 107:22.) Craig stated that he told Schobert and several others in the organization that IMS did not agree to the 2001 Agreement. (*Id*. 109:5–9.) Craig testified that he never received a cancellation notice for the 1998 Agreement prior to December 22, 2005. (*Id*. 108:12.) He testified that Anderson, a manager for ICTC, told him that ICTC would not be setting up other distributors in his exclusive territory. (*Id*. 124:25–125:2.) Craig stated that IMS sold ICTC's new line of products to about 25% of its customers, but that customers did not believe that the productivity increases of the new products offset the additional costs. (*Id*. 154:7–8, 11–12.)

IMS also introduced the deposition testimony of Darin Struss, an area manager for ICTC. Struss testified that he helped foster the relationship between ICTC and DECO, and that sales to DECO from ICTC increased significantly in 2004. (*Id*. 214:23–216:2, 219:6.) He also stated that DECO began to distribute ICTC products to customers in eastern Iowa that were not integrated customers. (*Id*. 233:25–234:2.)

IMS called to the stand Terence Henebry, a former sales manager for ICTC. Henebry testified that he drafted the 1994 Agreement, and that it gave IMS an exclusive distributorship. (*Id*. 242:22.) Henebry also testified that he negotiated the 1998 Agreement, and that it also gave IMS an exclusive distributorship. (*Id*. 247:14–16.) Henebry stated that if a distributor came to ICTC and wanted to buy product that the distributor intended to sell in IMS's exclusive territory, ICTC felt an obligation to sell to the distributor. (*Id*. 278:1–3.) However, ICTC would sell the product to the competing distributor at list price. (*Id*. 278:4.)

Finally, IMS called Brian Stephen to the stand. Brian is the vice president of IMS. (*Id*. 280:9.) Brian testified that the 2005 letter was the first time that ICTC notified IMS that it was terminating its relationship with IMS. (*Id*. 283:7–8.) Brian stated that ICTC, at no time after

7

IMS received the 2001 Agreement and letter, told IMS that it was allowing competitors to sell in IMS's exclusive territory. (*Id*. 291:11.) Brian also stated that, since 1994, IMS has used its best efforts to sell ICTC products. (*Id*. 290:22–23.)

IMS entered into evidence several exhibits with respect to damages. IMS entered into evidence Exhibit 6, which is a list of IMS's customers and the amount sold to each customer from the year 2001 to 2007. Sales to many customers located in IMS's exclusive territory dropped dramatically starting in 2002. The court allowed into evidence Exhibits 25 and 26, which show sales by DECO to former IMS customers in the years 2004 and 2005. The court also allowed in Exhibit 28 page 1, which shows IMS's sales, gross product, and gross margin for the years 2001–05. Parts of Exhibit 28 page 2 were let into evidence too. Those parts let into evidence purport to calculate damages by multiplying IMS's gross margin with sales by ICTC to other distributors in IMS's exclusive territory for each year between 2001–05. Brian Stephen explained how the gross profit margin figure was calculated. (*Id*. 296:3–298:20.) Exhibit 28 page 2 calculated the total damages in this case to be $582,797.87.

This evidence viewed in the light most favorable to IMS constitutes more than a "mere scintilla" of evidence supporting the jury verdict. This is especially true considering that the evidence set forth in this opinion does not constitute all of the evidence introduced by IMS to support its case. The jury's verdict did not result in a miscarriage of justice. There was a rational connection between the evidence presented in this case and the damages awarded by the jury, which were lower than the damages sought by IMS. Finally, IMS's counsel committed no conduct that would justify overturning a jury verdict. For these reasons, ICTC's renewed motion for judgment as a matter of law under Rule 50(b) or, in the alternative, for a new trial under Rule 59(a) is denied.

IMS's motion for a new trial challenges the court's rulings that IMS could not recover on its claim that ICTC failed to accept unused inventory and that IMS could not recover special damages. It is undisputed that the inventory was lost to the flood of 2008. That inventory is no longer in salable condition. The court will not grant a new trial on that issue.

IMS acknowledged that ICTC sent a termination letter in December 2005. No damages are recoverable in this case for a time period after the termination of the contract. The "special damages" sought by IMS in this case are not recoverable. The court will not grant a new trial on the issue of special damages. The court denies IMS's motion for a new trial.

**IV. IMS's motion to alter and amend Judge Kapala's judgment entry**

IMS requests that the court amend Judge Kapala's order of April 2, 2008 under Rules 54(b), 58, and 59. IMS argues that Judge Kapala erred in applying a prejudgment interest rate of 15%. IMS also argues that Judge Kapala erred in awarding certain costs to ICTC.

Rule 54(b) allows for the court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." *Fed. R. Civ. P.* 54(b). Making such a finding and directing entry of final judgment renders the judgment appealable. Where the court does not direct entry of final judgment regarding an order or decision which adjudicates fewer than all of the claims or parties, the action does not end as to any of the claims or parties. *Id*. That order or decision "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Id*.

Rule 59(e) empowers a party to make a motion to alter or amend a judgment. *Fed. R. Civ. P.* 59(e). The court will alter or amend a judgment "only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch et al.*, 517

9

F.3d 489, 494 (7th Cir. 2008).

On February 11, 2010, this court elected not to revise Judge Kapala's April 2 order under Rule 54(b). Upon entry of judgment on the jury verdict on February 11, Judge Kapala's judgment in this case regarding ICTC's breach of contract claim became final and appealable under Rules 54 and 58. Thus, IMS's motion to alter or amend Judge Kapala's April 2 order is a motion under Rule 59(e).

Judge Kapala's December 13, 2007 order interpreted the relevant contract to find that the prejudgment interest rate applicable to ICTC's award was 15%. He allowed for supplemental briefing on the interest calculation. Judge Kapala's February 20, 2008 order indicates that IMS made no objection to ICTC's interest calculation. Thus, Judge Kapala awarded interest in the amount of $28,535.88 as calculated by ICTC at 15%. IMS has not demonstrated that Judge Kapala made a manifest error of law, and has not presented any newly discovered evidence. This court sees no reason to alter or amend Judge Kapala's interest calculation.

Judge Kapala also allowed supplemental briefing on the proper amount of costs and fees to award ICTC. He made findings regarding mediation costs, travel charges, legal research costs, deposition costs, copying costs, and other charges in his February 20, 2008 opinion. He also determined that a factual dispute existed regarding approximately $1200 in costs and fees. He invited parties to either come to an agreement regarding costs and fees, or to set a hearing. On April 2, 2008, Judge Kapala signed an order indicating that an agreement had been reached, and that IMS owed $4397.64 in fees and costs. IMS has not demonstrated that Judge Kapala made a manifest error of law, and has not presented any newly discovered evidence regarding this finding. The court will not alter or amend Judge Kapala's April 2 order. For these reasons, the court denies IMS's motion to alter or amend Judge Kapala's April 2 order.

Both parties have indicated that they intend to appeal the judgments in this case. The court finds that an offset would not be appropriate under the circumstances. The court denies IMS's motion to offset the judgments.

**V.  ICTC's motions for leave to file a memorandum in excess of 15 pages and for a stay on enforcing judgment while the renewed motion for judgment as a matter of law is pending**

The last two motions before the court are ICTC's motion to file an oversized memorandum in support of its renewed motion for judgment as a matter of law and ICTC's motion to stay execution of judgment while its renewed motion for judgment as a matter of law is pending.

ICTC's memorandum in support of its renewed motion for judgment as a matter of law is 25 pages long. Local Rule 7.1 requires that a brief in excess of 15 pages have a table of contents with the pages noted and a table of cases. Briefs that exceed the page limit and that do not have a table of contents and a table of cases risk being stricken by the court under the local rule. ICTC's memorandum does not have a table of contents or a table of cases. Despite ICTC's violation of Rule 7.1, the court grants ICTC's motion to file a brief in excess of 15 pages.

The court denied ICTC's renewed motion for judgment as a matter of law, *infra*. The motion to stay the case pending resolution of that motion is denied.

**VI.  Conclusion**

ICTC's renewed motion for judgment as a matter of law under Rule 50(b) or, in the alternative, for a new trial under Rule 59(a) is denied. IMS's motion for a new trial under Rule 59(a) is denied. IMS's motion to alter and amend Judge Kapala's judgment entry is denied. ICTC's motion for leave to file a memorandum in excess of 15 pages is granted. ICTC's motion for a stay on enforcing judgment while the renewed motion for judgment as a matter of law is

pending is denied.

        **ENTER:**

        _____
        **P. MICHAEL MAHONEY, MAGISTRATE JUDGE**
        **UNITED STATES DISTRICT COURT**

**DATE**: May 19, 2010